UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONYA N. NICKELL,

      Plaintiff,

v.

                                    Case No. 1:25-cv-577
                                    Hon. Jane M. Beckering

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claims for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff filed applications for DIB and SSI on September 22, 2022.  PageID.40. Plaintiff alleged a disability onset date of September 30, 2019, which she amended to December 12, 2018.  *Id*. Plaintiff listed a number of disabling conditions.[1]  Plaintiff completed the 9th grade and had training in the food service industry, with past relevant work as a fast food worker, sandwich maker, and fast food services manager.  PageID.48, 297.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a partially favorable written decision on April 30, 2024.  PageID.40-50.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Plaintiff listed the following conditions which limited her ability to work which include: osteogenesis imperfecta; asthma; back injury/surgery; knee problems; arthritis; bone spurs; torn shoulder ligaments and muscle spasms; daily migraine headaches; depression; concentration disorder; and Crohn's disease.  PageID.296.

1

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[2]  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended onset date of December 12, 2018, and that she met the insured status requirements of the Social Security Act through September 30, 2019.  PageID.42-43.  At the second step, the ALJ found that plaintiff

---

[2] At step four, the ALJ found that plaintiff was able to perform her past relevant work as a fast food worker and fast food services manager.  PageID.48.  At that point, plaintiff was determined to be not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  However, the ALJ proceeded to step five where she made and made "alternative findings for step five of the sequential evaluation process" and  a further determination that "[i]n addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering the claimant's age, education, work experience, and residual functional capacity." PageID.49.   The Court finds no authority for an ALJ to find a claimant disabled at step four and then make an unnecessary determination of disability at step five. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process.* The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.  These are the five steps we follow: . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 404.1560(b).

20 C.F.R. § 404.1520(a)(4)(iv) (emphasis added).  *See also*, 20 C.F.R. § 416.920(a)(4)(iv).  *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)). Because the ALJ's determination at step five is not authorized by the regulations, the Court will not address that finding.

has severe impairments of: osteogenesis imperfecta (OI); degenerative disc disease of the lumbar spine; mild degenerative joint disease of the bilateral knees; asthma; and migraines.  PageID.43. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.44.

> The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant can have no concentrated exposure to extreme cold/heat, humidity, fumes, odors, dusts, or gases. The claimant can have no exposure to unprotected heights.  The claimant is limited to occasional overhead reaching with the left upper extremity and occasional handling with the left upper extremity.

PageID.45. The ALJ further noted that, "the occasional reaching and handling limitations are not supported until the claimant's Title XVI claim."  *Id*. at fn. 1.

> The ALJ also found that plaintiff is capable of performing her past relevant work stating as follows:

> The claimant is capable of performing past relevant work as a Fast Food Worker (DOT #311.472-010/SVP 2/Light as generally and actually performed) and Manager, Fast Food Services (DOT #185.137-010/SVP 5/Light as generally performed, Sedentary as actually performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

PageID.48 (emphasis omitted).  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 12, 2018 (the amended onset date) through April 30, 2024 (the date of the decision).  PageID.50.

## III.    DISCUSSION

Plaintiff did not set out a statement of errors as required by the Court.  *See* Notice (ECF No. 6).  Rather plaintiff's brief set out arguments related to two generic issues.[3]  The Court will construe plaintiff's alleged errors as follows:

### A.    The ALJ failed to properly evaluate the opinions of Dr. Mohiuddin and Dr. Chiambretti

Shahida Mohiuddin, M.D., and Thomas Chiambretti, D.O. are state agency non-examining medical consultants who performed an initial review and reconsideration of plaintiff's medical records.

### 1.    The doctors' opinions

On February 14, 2023, Dr. Mohiuddin completed two physical residual functional capacity (RFC) assessments related to plaintiff's claim. The first RFC assessment evaluated plaintiff's current condition (*i.e.*, after September 30, 2019).  *See* Exh. 2A, PageID.94, 99. In this assessment the doctor opined: that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; that she can sit for a total of about 6 hours in an 8 hour workday; that she can stand and/or walk for a total of about 6 hours in an 8 hour workday; that she can never climb ladders, ropes, and scaffolds; that she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; that she had a limited ability to reach overhead and handle on the left side; and, that she must avoid concentrated exposure to extreme cold, extreme hot, humidity, vibration, and hazards such as machinery and heights.   PageID.99-101. The doctor also stated, "NO UNPROTECTED HEIGHTS".  PageID.101.[4]

---

[3] Plaintiff's issues are "The ALJ improperly evaluated medical opinion evidence" and "The ALJ failed to properly evaluate Plaintiff's subjective allegations".

[4] This is in response to the following instructions on the form: "Explain environmental limitations and how and why the evidence supports your conclusions.  Cite specific facts upon which your conclusions are based."  PageID.101.

Dr. Mohiuddin's second RFC assessment evaluated plaintiff's previous condition as it related to the DIB claim (date last insured September 30, 2019).  *See* Exh. 3A, PageID.105-106.  Dr. Mohiuddin opined:  that plaintiff can lift and/or carry twenty pounds occasionally and ten pounds frequently; that she can sit for a total of about 6 hours in an 8 hour workday; that she can stand and/or walk for a total of about 6 hours in an 8-hour workday; that she can never climb ladders, ropes, and scaffolds; that she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; that she must avoid concentrated exposure to extreme cold, extreme hot, humidity, vibration, and hazards such as machinery and heights.  PageID.110-111.  Unlike the first RFC assessment, this assessment did not reference "unprotected heights".  *See* PageID.111.

On June 26, 2023, Dr. Chiambretti completed two physical RFC assessments on reconsideration.  The first RFC assessment reconsidered plaintiff's current condition (*i.e.*, after September 30, 2019) (Exh. 5A, PageID.122).[5]  On reconsideration, Dr. Chiambetti found the same limitations with the addition of avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and, avoiding <u>all</u> exposure to hazards such as machinery and heights.  PageID.122-124.

Dr. Chiambretti's second RFC assessment reconsidered plaintiff's previous condition as it related to the DIB claim (date last insured September 30, 2019).  *See* Exh. 5A, PageID.125-127.  On reconsideration, Dr. Chiambetti found the same limitations for that time frame.  *Id*.

## 2.    Discussion

The applicable regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any

---

[5] Dr. Chiambetti's opinions also appear in Exh. 7A, PageID.137-142.

medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. §§ 404.1520c(b) and 416.920c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1).  The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

The regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1).  Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we

considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

The ALJ addressed the four state agency opinions as follows:

> The State agency limited the claimant to the light exertional level with postural, left-sided manipulative, and environmental limitations. (Exhibits 2A; 3A; 5A; 7A). The undersigned finds this opinion persuasive, as it is consistent with and supported by the evidence of record. Specifically, a limitation to light work, with postural, left-sided manipulative, and environmental limitations accommodates for findings of reduced range of motion, decreased upper extremity strength, the claimant's surgical history, and ongoing reports of pain. (e.g., Exhibits 2F; 6F-8F; 12F; 14F; 17F; 18F; Hearing Testimony). However, given the minimal objective findings available in the record, more restrictive limitations are not supported.

PageID.48.

Here, the ALJ's brief review of the doctors' opinions does not meet the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. The ALJ does not address the opinions in any detail, summarily referring to "minimal objective findings" found in over 400 pages of medical records and testimony. *See* PageID.56-91, 400-412, 648-867, 869-873, 874-929, 930-956, 969-975, 1068-1089, 1243-1278. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (quoting *Diaz*). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Here, the Court cannot trace the path of the ALJ's reasoning for finding the doctors' opinion(s) is(are) persuasive with respect to "the light exertional level with postural, left-

sided manipulative, and environmental limitations" but that the "more restrictive limitations are not supported". To the extent that the ALJ discussed limitations in other parts of the decision, she did not create a logical bridge between this previous discussion and the doctors' unidentified "more restrictive limitations" which she found to be unsupported. Accordingly, this matter should be reversed and remanded pursuant to 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the opinions of Dr. Mohiuddin and Dr. Chiambretti.

**B.    The ALJ failed to properly evaluate plaintiff's testimony**

Next, plaintiff contends that the ALJ failed to properly evaluate her symptoms, *i.e.*, plaintiff's testimony "that she was unable to stand, walk, or sit for prolonged periods of time." Plaintiff's Brief at PageID.1294. Plaintiff contends that the ALJ failed to use the two step process outlined in SSR 16-3p and omitted an "accurate and logical bridge" to invalidate her testimony. *See id*. at PageID.1294-1295.

SSR 16-3p sets out the two-step process for evaluating an individual's symptoms: (1) "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms;" and, (2) "We evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *3-4 (Oct. 25, 2017). *See* 20 C.F.R. §§ 404.1529(c)(1) and (2); 416.929(c)(1) and (2).

Here, the ALJ listed plaintiff's symptoms as follows:

The claimant alleges disability primarily due to osteogenesis imperfecta (OI) (also known as brittle bone disease). The claimant contends this disease affects many areas of her body. Notably, the claimant testified to significant pain and decreased mobility due to lower back and bilateral knee problems. She also indicated she can easily throw out her shoulder. Other areas affected include her teeth, jaw, vision, hearing, and breathing. Additionally, the claimant endorsed daily

migraine headaches, which would further limit her ability to work on a consistent schedule. <u>Because of her back and knee issues, the claimant stated it is difficult for her to stand, walk, or sit for prolonged periods.</u> She also has painful, widespread, spasms that occur weekly and that are worsened with increased movement. The claimant was noted to undergo a remote lumbar fusion, but since then she has continued to have pain. She testified she does not follow with any type of specialist, indicating she felt her last doctor was dismissive of her symptoms and other providers only want to push pain medication. The claimant has refused pain medication due to her sensitivity (e.g., nausea and fatigue) to them. Additionally, the claimant testified physical therapy was unsuccessful due to the limited number of sessions covered by her insurance. Thus, the claimant does recognize a gap in treatment. Still, she indicated she utilizes bracing. She also indicated she uses a cane daily, as well as a wheelchair or walker when outside the home. Though, the claimant estimated she only leave [sic] her home twice a month. In terms of daily activities, the claimant testified she is unable to bathe independently due to her equilibrium, but she is able to dress herself. She cannot lift a gallon of milk. She is able to drive for short distances (around 15 minutes), but experiences pain in her back and knees. (Hearing Testimony).

PageID.46.

The ALJ's decision included two paragraphs which summarized plaintiff's medical history. *See* PageID.46-47. The ALJ evaluated plaintiff's alleged symptoms as follows:

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the claimant mainly contends her OI and its complications make her unable to sustain employment. While the record recognizes limitations due to these impairments, the degree of functional limitations alleged by the claimant is inconsistent with the medical evidence of record. As mentioned above, there are minimal objective findings during the period at issue. Although clinical findings have been consistent with her abovementioned impairments, with observed spinal and musculoskeletal deficits, these issues do not appear to be significantly limiting. In particular, the claimant does not appear to be receiving any treatment for her back or upper extremity problems. Nor is there evidence of migraine headaches to the frequency alleged by the claimant to support off task or absence limitations. There is also no support for the medical necessity of a cane or walker. Nevertheless, the claimant's reported limitations have been considered and accommodated in the above residual functional capacity.

PageID.46-47 (emphasis added).[6]

---

[6] The Court notes that portion of the ALJ's decision from PageID.47 is quoted in plaintiff's brief on PageID.1294.

Based on this record, the Court cannot determine the path of the ALJ's reasoning with respect to plaintiff's symptoms. *See Diaz*, 55 F.3d 300, 307 (7th Cir. 1995); *Hurst*, 753 F.2d at 519; *Stacey*, 451 Fed. Appx. at 519. The ALJ's evaluation of plaintiff's symptoms did not refer to specific functional limitations or specific objective findings in the medical record. Due to the lack of specificity, the Court cannot determine which symptoms the ALJ accepted, the extent of those symptoms, the related functional limitations, and how the ALJ accommodated those functional limitations. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's symptoms and the extent to which those symptoms limit plaintiff's ability to perform work-related activities.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner (1) should re-evaluate the opinions of Dr. Mohiuddin and Dr. Chiambretti, and (2) should re-evaluate plaintiff's symptoms and the extent to which those symptoms limit plaintiff's ability to perform work-related activities.

Dated: June 22, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).